OPINION OF THE COURT
George B. Ceresia, Jr., J.
The petitioners have commenced the above-captioned proceedings pursuant to article 7, title 2 of the Real Property Tax Law to seek review of special franchise assessments established by the State Board of Real Property Services (hereinafter, the State Board). Five of the proceedings have been commenced by the owners of the special franchise, either Time Warner Entertainment Company, L.P. or TWI Cable, Inc. Four of the proceedings have been commenced by the local assessing unit, the City of New York. TWI Cable, Inc. and Time Warner Entertainment Company, L.P. (the moving parties) have made a motion pursuant to CPLR 3126 for preclusion on grounds that the City of New York has willfully refused to respond to certain interrogatories. The City of New York opposes the application, arguing that only limited discovery is authorized in a proceeding to review a special franchise assessment, the primary discovery tool in such a proceeding being an exchange of appraisals. The City also argues that the interrogatories are improper.
Turning first to a preliminary issue, a considerable portion of the argument of the parties is devoted to the question of whether or not section 202.59 of the Uniform Rules for Trial Courts is applicable to the instant proceedings (see, 22 NYCRR 202.59). The moving parties maintain that this section is not applicable to proceedings to review special franchise assessments since subdivision (a) specifically states that section 202.59 “shall apply to every tax assessment review proceeding brought pursuant to title 1 of article 7 of the Real Property Tax Law in counties outside the City of New York” (see, 22 NYCRR 202.59 [a] [emphasis supplied]). The moving parties point out that review of special franchise assessments is governed by title 2 of article 7 of the Real Property Tax Law. While this is *213 correct, RPTL 740 (1) recites: “[a] special franchise assessment may be reviewed so far as practicable in the manner prescribed by this article for reviewing an assessment of real property.” In addition, title 1 of article 7 of the RPTL is entitled “General Provisions,” which would seem to imply that title 1 is applicable to other portions of RPTL article 7, unless specifically contraindicated. The court also observes that CPLR 3140 recites as follows: “Notwithstanding the provisions of subdivisions (c) and (d) of section 3101, the chief administrator of the courts shall adopt rules governing the exchange of appraisal reports intended for use at the trial in proceedings for condemnation, appropriation or review of tax assessments.” The only rule which would appear to be remotely applicable in this instance is section 202.59 of the Uniform Rules for Trial Courts. The court accordingly finds section 202.59 to govern the review of special franchise assessments under article 7, title 2 of the Real Property Tax Law.[1]
Turning now to the interrogatories themselves, the court must first note that it is well settled that, in the most common form of proceeding brought under RPTL article 7 (that is, those proceedings brought by a property owner against a local assessor under RPTL article 7, title 1), a petitioner will not, ordinarily, be granted discovery with respect to the methods or materials employed by the assessor in arriving at a particular assessment (see, Leaman v Ambrosio, 224 AD2d 755 [3d Dept 1996]; see generally, Review and Reduction of Real Property Assessments in New York § 4.12, at 221 et seq. [3d ed]). The reason behind this rule is that the function of an assessor is judicial in character (see, Blooming Grove Props, v Board of Assessors of Town of Blooming Grove, 34 AD2d 953 [2d Dept 1970]), and that the validity of the assessment should be judged not by the particular methodology employed by the assessor, but rather “by the fairness and reasonableness of [the assessor’s] conclusions” (Review and Reduction of Real Property Assessments in New York § 4.12, at 221 [3d ed]). Phrased differently, “[t]he assessment review proceeding is limited to a determination of the correctness of the assessment and not a review of what the assessor did or how he [or she] arrived at *214 his [or her] conclusion” (Matter of 425 Park Ave. Co. v Finance Adm’r of City of N.Y., 69 NY2d 645, 648 [1986]).
A review of the interrogatories at issue reveals that, in general, they focus on the manner and method of how the City made (or is making) certain determinations with respect to the value of the moving parties’ facilities. For instance, the interrogatories recite, in part, as follows:
“69. Identify each person with knowledge of how the City of New York’s claimed full values for the Time Warner Franchises for 2000 and 2001 were determined and state the role of each.
“70. (a) State the basis for the statement in paragraph 2 of the Affirmation of Bernard Kushner dated July 18, 1996, document number P00002-P00004, that Time Warner AxS had a backbone of approximately 45 miles of fiber optic lines in leased conduit, (b) Identify and produce all documents concerning such statement, including but not limited to all documents on which such statement was based.
“71. Identify and describe the manner and method by which the City of New York determined the claimed full value of MCTV for 2000 to be $41,000,000.
“72. With regard to the City of New York’s determination of the claimed full value of MCTV for 2000:
“a. State how the inventory of the tangible property was determined.
“b. State how the cost per mile of cable in leased conduit was determined.
“c. State how the cost per mile of cable in owned conduit was determined.
“d. State how the amounts for physical depreciation were determined.
“73. Identify and describe the manner and method by which the City of New York determined the claimed full value of MCTV for 2001 to be $50,000,000 * * *
“79. State whether the City of New York disputes the State Board’s calculation of the costs per mile the State Board employed to determine the 1999 final special franchise full values for the Time Warner Franchises.
“80. If the answer to Interrogatory 79 is anything *215 other than an unqualified negative, state (a) the reason the City of New York disputes the State Board’s calculations, (b) the facts supporting a different calculation of the costs per mile than that used to determine the 1999 final values, and (c) the costs per mile the City of New York contends should be employed in determining the 1999 final special franchise values for the Time Warner Franchises * * *
“94. Separately for 1999, 2000 and 2001 and for each of the following items of inventory, state what the City of New York contends is a proper cost per mile and describe how that cost per mile is determined * * (Emphasis supplied.)
The interrogatories do not, in the court’s view, attempt to elicit specific facts or evidence with regard to the property subject to the special franchise assessments. Rather, they are designed to disclose the method and manner by which the City arrived at certain computations. In addition, to a great extent, they duplicate information which would be disclosed in an appraisal.[2]
The moving parties cite the case of Matter of National Fuel Gas Distrib. Corp. v State Bd. of Equalization & Assessment (86 AD2d 707 [3d Dept 1982] [appellate history omitted]) in support of their argument as to why the interrogatories are proper. While it is true that the Appellate Division in the National Fuel Gas Distrib. case allowed the petitioners to take the oral deposition of the State Board of Equalization and Assessment, the scope of the examination was limited to facts concerning the basis of the assessment, and expressly excluded mental processes and formulae used in arriving at the Board’s determinations. In this instance, as noted, a number of the interrogatories at issue inquire as to the manner and method by which the City determined the full value of specified property. Others request the City to “state how” a particular item was determined.
Mindful that the purpose of the assessment proceeding under RPTL article 7, title 2 is to determine the correctness of the special franchise assessment as determined by the State Board — and not to critique the methodology employed by the State Board (see, Matter of 425 Park Ave. Co. v Finance Adm’r of City of N.Y., supra), or the methodologies of the other par *216 ties — the court finds that the interrogatories dealing with the City’s computation methodologies are improper, overly broad and patently burdensome (see, Blank v Schafrann, 180 AD2d 886, 887-888 [3d Dept 1992]; Lemer v 300 W. 17th St. Hous. Dev. Fund Corp., 232 AD2d 249, 259 [1st Dept 1996]). The appropriate remedy in such circumstances is to deny the moving parties’ motion rather than to attempt to prune the palpably improper, over-broad, and egregiously burdensome disclosure requests (see, Spancrete Northeast v Elite Assoc., 148 AD2d 694, 696 [2d Dept 1989]; see also, Blank v Schafrann, supra', Lemer v 300 W. 17th St. Hous. Dev. Fund Corp., supra).[3]
The court concludes that the motion pursuant to CPLR 3126 for preclusion must be denied.

. The court is aware that the facilities at issue here are located within the City of New York. The court notes that section 202.59 is applicable to tax assessment review proceedings brought in counties outside the City of New York, while section 202.60 is applicable to tax review proceedings brought in counties within the City of New York. Inasmuch as the instant proceedings are pending in Albany County, the court has concluded that section 202.59 is applicable, rather than section 202.60. Significantly, a review of the two sections reveals that they are very similar in content and scope.

. The court notes that the parties have entered into stipulations with regard to the filing of appraisals.

. One further point should be made. It is the court’s view that the interrogatories in question, by demanding such items as the City’s underlying computations and methodologies, improperly seek disclosure of the opinions of the City’s expert with respect to the values that said expert assigns to the facilities in question. Notably, in New York State, discovery with respect to expert opinion is severely restricted, being limited to that permitted under CPLR 3101 (d) (1), or (as relevant here) to the exchange of appraisals as set forth in Uniform Rules for Trial Courts § 202.59. To illustrate the point, it is well settled that, absent special circumstances, a party may not examine an adversary’s expert before trial (see, Hallaban v Ashland Chem. Co., 237 AD2d 697, 698 [3d Dept 1997]; Ruthman, Mercadante & Hadjis v Nardiello, 288 AD2d 593, 594-595 [3d Dept 2001]). In this instance the moving parties have not demonstrated the existence of special circumstances to support the disclosure of expert opinions.